### In re KNAUTH, NACHOD & KUHNE.

#### Ex parte FLEISCHMANN.

(District Court, S. D. New York. April 29, 1924.)

Bankruptcy ☞145(1)—Customer held not liable for loss resulting from bankruptcy of broker.

> An order by a customer to a broker to buy for him certain shares of stock when issued bound him only to pay when called on to take up the shares, and he cannot be held liable because the broker, who had contracted for the shares in advance of issue, became bankrupt, and the contract was closed with a loss to his estate.

In Bankruptcy. In the matter of Knauth, Nachod & Kuhne, bankrupts. On petition by Rose Fleischmann to reclaim assets. Trustee held not entitled to claimed deduction.

Petition by the customer of a broker to reclaim certain assets found in the hands of the receiver belonging to the petitioner. The question reserved at the argument was whether the indebtedness of the petitioner to the bankrupt should include an item of $2,100 charged against the customer under the circumstances set forth below.

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Adolph Feldblum, of New York City, for petitioner.
Rosenberg & Ball, of New York City, for receiver.

LEARNED HAND, District Judge. The question reserved after the argument was this: A broker's customer gave an order to buy 1,000 shares of "Rapid Transit securities * * * when, as, and if issued." The broker made a contract with another broker on the Exchange to accept and pay for the shares, "when issued." In that posture the customer's broker went bankrupt, and the selling broker "closed" the contract. As the value of "Rapid Transit securities when issued" had fallen, the selling broker charged the bankrupt with the difference, as allowed under the rules of the Exchange. With this loss, which the selling broker collected, the receiver seeks to charge the customer's account as a debt.

The contract made by the bankrupt on behalf of the customer was in two parts; it consisted of a right to call upon the seller for the security "when issued" on payment of the price, and of a promise by the broker to pay the price when the security was tendered. The right to the security was held by the broker in trust for the customer; his promise to pay the purchase price was secured by a corresponding promise of the customer to indemnify him when he was called on to take up the security. The right to the security was subject to be defeated, if the broker became insolvent, which he did. His insolvency was also an anticipatory breach of his promise to pay the purchase price, and he has paid the loss so arising.

The case turns upon whether the customer's promise to indemnify the broker included the loss due to his failure to remain solvent. Clearly not. The customer's promise was only to pay the broker when he was called upon to take up the shares. It had no purpose but to save the broker whole if he performed his contract with the seller. To hold the customer on any other occasion is to impose upon him a promise which he never made. Duncan v. Hill, L. R. 8 Exch. 242 (Ex. Ch.).

The receiver argues that the case is the same as one in which the broker buys a security for the customer and repledges it for his advance. The analogy is good, and the result is the same. If in that case the broker becomes insolvent, and the pledgee sells the security, he may charge the broker with the loss, if the pledgee does not pay the debt. But the broker may not turn about and charge the customer with the loss. The customer has as little promised to pay the loss due to the broker's default as in the case at bar.

Another question would arise if the receiver had shown that the value of "Rapid Transit securities, when issued," never rose above the price at which the seller closed out the contract until the time of issue. In that case he would have proved that the customer would have had to pay as much as the loss charged on his account, if he (the broker) had remained solvent. Whether that would be enough to charge him I need not say. There is no such proof, and it is not enough merely to prove the loss sustained by the broker's default.

The customer's account will therefore be stated, by deducting the item of $2,100 charged for this loss.